Good morning, and may it please the Court, Annie Pecoria, Federal Defenders of San Diego, on behalf of the defendant and appellant, Benjamin Ochoa-Ramirez. In my time with you this morning, Your Honors, I'd like to discuss the first issue regarding the grand jury instructions, unless the Court has other questions regarding any of the other issues raised in my brief. Mr. Ochoa-Ramirez was indicted by a grand jury, misinstructed about the government's nonexistent duty to disclose adverse evidence or evidence that cuts against the charge, and therefore, his conviction must be reversed. To begin with, this grand jury that indicted Mr. Ochoa-Ramirez on the both counts that he was convicted of that trial was empaneled in January of 2007. And the district court that instructed and conducted the voir dire of that grand jury gave the grand jury three instructions that I challenged in my brief. The first instruction is found in the record on page 51, and it says, In most instances, the U.S. attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence. The second instruction is... What does in most instances mean? How does that affect what was said, in most instances? Well, Your Honor, I think... That also means, in some instances, the United States attorney is not duty-bound, doesn't it? It could suggest that, Your Honor. That's correct. But I think when you take a look at all of the instructions as a whole, there's a bit of an inconsistency, because later on... It's not quite as much of a torpedo as you suggest. In other words, it doesn't say the United States attorney is always duty-bound. I'm not sure that might make any difference, but there's a little bit of a difference. Well, I think later on, when the district court is instructing the grand jury, in the voir dire portion, he says, My experience is that prosecutors don't play hide-the-ball. If there's something adverse or that cuts against the charge, you'll be informed of that. And that's page 78 and 79 of the record. So at least in one portion of the discussion between the district court and the grand jury, there was a qualifier, in most instances. In a separate portion of the dialogue between the district court and the grand jury, there was a much more concrete statement that you... The judge said it, in my experience. That's correct. In my experience, if there's something adverse or that cuts against the charge, you'll be informed of that. And I think that is different than in most instances. In that second portion, the district court, I think its statements could be interpreted to be a much more absolute duty, that it will always do that. And in light of these two conflicting instructions, in a sense, this court in Stein said that we can't presume that the jury correctly followed one instruction versus another instruction if the instructions conflict. When was the last case you found that dismissed an indictment because of some error in jury instructions to a grand jury? Your Honor, to be quite candid, I haven't found one yet. But, you know, what I think, and I know that this court has addressed these instructions before and multiple times, but I think what makes these specific instructions different, and the reason why I like to focus my time on these instructions, is because the district court gave extraneous or additional instructions to the grand jury and statements to the grand jury that really haven't been addressed in the previous cases where this court's dealt with the standard or the pattern of grand jury instructions. And, again, when you take those three instructions as a whole, specifically, again, in most instances, the U.S. attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence, and also that the prosecutors don't play hide-the-ball. If there's something adverse or that cuts against the charge, you'll be informed of that. What it did was created an inference in the grand jury's mind, and the inference is the following. First, that the prosecutor is obligated to disclose to me any exculpatory evidence, and actually much broader than just exculpatory evidence, but any evidence that is adverse or that cuts against the charge. Second, if I don't hear any such type of evidence, then it's safe to presume that no such evidence exists. Did it exist in this case? It did. There was a statement made by Mr. Ochoa-Ramirez to the agents following his arrest where he denied knowledge of the drugs concealed throughout the court. And the government was aware of that statement at the time that Mr. Ochoa-Ramirez was indicted. I'm not sure which specific prosecutor handled the indictment, but I do know that that evidence ---- The second part of that question is did it exist and did the prosecutor at the proceeding, was it, was that evidence available to him? Was he aware of it? I'm not entirely certain of the answer to that question. I know that ---- You're not certain at all. I'm not certain at all. You don't know. What I do know is this, that the statement was video recorded and that the statement regarding Mr. Ochoa-Ramirez's knowledge of the drugs was included in the complaint that was filed and made a part of the record prior to the indictment in the case. There would be no point in the prosecutor bringing that in or even if he knew about it because generally the statement that Judge Burns made is not true. Generally, they're not necessarily providing all the exculpatory or any of the exculpatory evidence to the grand jury. That's correct and that's precisely the problem. So I think I tend to agree with you that Judge Burns, I guess, rearranging charges to the grand jury were factually incorrect and probably, I mean, should not be given, not be told to the grand jury unless it's very precise. For example, unless they say, well, the manual to the U.S. attorney says that they have a duty to do this, but that doesn't mean they necessarily do. I mean, it's something that was more accurate. But what then? Well, Your Honor, I think that if the error here is a structural error and these instructions and that inference, what it does is it kind of impinges upon two of the grand jury's functions. The first is this Court and the Supreme Court have recognized that the grand jury has the power to decide which charges to bring. It has the power and ability to indict even in the absence of probable cause. And it has the decision to decide whether to charge a misdemeanor or a felony, whether to charge two felonies or one felony. And these instructions, what it does is it creates, again, that inference, which is that if I'm not presented with exculpatory evidence, I can presume none exists and I will therefore indict. So I think that these instructions, first of all, affect the grand jury's power in deciding what to charge and how much to charge. Secondly, it suppresses the grand jury's ability to investigate. Again, as both the Supreme Court in Vasquez and this Court in Navarro-Vargas made clear, the grand jury does have the power to investigate, to subpoena witnesses, to request additional testimony. And when this instruction is presented, which is that if there's something adverse or that cuts against the charge, the grand jury is going to hear about it. And then they don't hear about it, the grand jury's use of its investigatory power really becomes rather meaningless because There are quite a number of cases that prohibit vouching in a trial. The United States attorney, the assistant, is not allowed either to vouch for the credibility of witnesses or for him or herself, right? That's correct. Are there any of those cases that slosh over into the grand jury thing? In other words, what if an assistant United States attorney got up in a grand jury and said, I personally can vouch for the credibility of my witnesses in this case. And furthermore, I as a representative of the government would never lie to you, so you can rely on me at all times. Would something like that? Has there ever been anything like that? I don't believe there is. In Navarro-Vargas Could an assistant United States attorney, in your opinion, under the law, do something like that in front of a grand jury? If not, how could a judge do it for the assistant? Well, to the extent that these instructions vouch, it's clear that this Court, in Navarro-Vargas, in the majority opinion, stated that the statements regarding the duty, honor bound, and candid U.S. attorney is unnecessary and surplusage. Whether they – and I would take unnecessary as meaning inappropriate. And what Navarro-Vargas said, well, in the context of those instructions given – Okay. I mean, everybody tries to push. Unnecessary doesn't necessarily mean inappropriate, but go ahead. Okay. Well, at a minimum, it's unnecessary. I think we could agree on that. So what? So it's unnecessary. Well, I think when you take all the remainder of the instructions as a whole, what it creates is, again, that inference. And I think that the statements regarding the honor, duty bound, candid U.S. attorney, what that does is it creates – it even further bolsters this idea that the grand jury, who is supposed to hear about exculpatory or adverse evidence or evidence that cuts against the charge because the district court has instructed the grand jury it will hear that information, that when it doesn't hear it, the honor bound, candid U.S. attorney must therefore not have any and will therefore – it's safe to indict. And it's safe to hold this defendant, Mr. Ochoa-Ramirez, responsible completely. And then, again, the grand jury is deprived of its opportunity and its ability to exercise both its investigatory power and its charging power or authority. Yeah. You know, my problem with this is my – and my impression of the Court's attitude to a grand jury error is that, well, he got tried afterwards and he got convicted, so what harm did it do? Well, I think – I mean, I'm not suggesting that's the proper approach, but that's my impression of the approach the courts have taken. Well, respectfully, Your Honor, I would disagree with that a little bit. All right. So what is it that causes a court to dismiss the indictment when there's error in the grand jury instruction? I think the error has to rise to the level of a structural type error that deprives the defendant of the opportunity for a correct and fully functioning grand jury. And what case tells you what kind of error that is? In Vasquez, Your Honor, the Supreme Court found there was structural error when a grand jury – when there was evidence that – That's racial discrimination. That's correct. There was racial discrimination in the light of the grand jury. And in responding – In the composition of the grand jury? That's correct, Your Honor. Selection and composition. That's correct. And in responding – But I said what kind of – what case tells you what kind of an error in the instructions of the grand jury constitutes a structural error? There isn't a specific case regarding – There isn't a case. That's not that I'm aware of. Even with respect to the instructions given to the trial jury, there's a harmless error standard that's applied, isn't there? Is there not? With respect to the instructions – An instructional error is just not – is not structural error. And that's the end of the whole thing. You go past it. Well, I would say that error in the grand jury that I'm talking about is beyond just the deprivation of a specific jury instruction. What I'm talking about here is what these instructions did was affect the integrity of the grand jury. And in Vasquez v. Hillary, the Supreme Court, when talking about structural error – and, again, that's correct. It's a racial discrimination in the context of the composition of the grand jury. Out of California. That's correct. But in that case, what the Supreme Court wrote was, well, even though there was a conviction after the fact, that doesn't end the analysis. And it's still structural error because what happens in the grand jury – But the question is how do we tell whether something is structural error or not? Obviously, there are many errors that aren't structural. So I think Judge Reinhart is asking you, is there a test or is there some sort of a road map here? How do we know what's structural and what's not? What are the attributes of a structural error? Well, I would say an attribute is when the structural integrity of the proceeding is affected. So in this case, when the structural integrity of the proceeding, which is how the grand jury makes a determination about whether to indict or not to indict, is affected, then the whole grand jury sitting there, in and of itself, is not performing in the way its constitution requires it to perform. It undercuts the independence of the grand jury. I'm sorry, Your Honor? It undercuts the independence of the grand jury. That is part of it, yes. It undercuts the independence. The grand jury is supposed to stand between the prosecutor and the defendant. Yes, Your Honor. That's correct. And what these instructions do is it creates a structural error because Mr. Ochoa Ramirez was deprived of that opportunity. I've got about a minute and a half left, and I would like to save some time for rebuttals. So unless there are further questions, I'll see you later. Thank you. You're the first person who's actually saved time. I was practicing. And we won't penalize you for that. Thank you. Okay. Please, the Court. George Hardy for the United States. Good morning. I'll be brief. On this one issue, there's no doubt that Judge Byrne's free-ranging was a bit off the mark. Not quite. What's off the mark mean? I mean, okay, sure. Cuts against U.S. v. Williams, and you can see that in your brief. Okay. Well, the specific instructions were one that he specifically referenced. In most instances, the U.S. attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence. Now, technically, that's correct, because they're ethically bound under the U.S. attorney's manual to present substantial evidence directly negating guilt. Now, I'm not going to argue that Judge Byrne's was correct here. He clearly made a mistake. Let's throw him under the bus and move on. But my argument is that there's no way that you can say that this was a structural error. Okay, so let's stop at the error point. I think we all say there's an error. What do we do about that? Do we write an opinion and say that this is error and expect that Judge Byrne's will change it in the future? Well, I think that, well, first of all, another panel of this Court is reviewing this exact same issue. Navarro case. Yes. There are two points. Secondly, there have been a series of cases involving Judge Byrne's instructions to the grand jury, so I think his attention is peaked. On this particular issue, certainly a comment that these are – this was not correct and surplusage or off the mark or not appropriate or error. Or contrary to U.S. v. Williams. Contrary to U.S. v. Williams. He didn't say that there was a legal duty, but it's contrary in effect to U.S. v. Williams. But the more important point for this case, for this prosecution, is whether or not there was structural error. And I submit that this is important for every other case that was indicted by this grand jury because it was structural as to this case. I guess every case that was indicted by that grand jury is suspect at this point. And that case, that argument – The Grand Jury is the largest jury in the United States. And there are hundreds, if not thousands, from 18 months, two years, and this – That won't deter us. I'm sure not. But you don't have to do that. Just think you'll be famous as the lawyer on the case that – Thank you so much. So how do we know whether – I mean, what's the function of the grand jury? Well, there are long pages written by the men in bank courts in the Navarro-Vargas case describing what the function – how it's changed over years. And it's the bulwark between the government and the accused. Exactly. And it's – And so if you take that bulwark and you penetrate it with some kind of a statement that really the government always does the right thing and tells you the truth, don't worry about it. Well, the government being a good guy, that has already been set aside as not being unconstitutional, being surplusage, not necessary, but not unconstitutional. That was the Navarro-Vargas case. So what do we have is that they have a duty to present exculpatory evidence, essentially. And they don't. So what happens as a result of that? The argument is that an inference pops up that there is exculpatory evidence, and further, that that has the effect of undermining the independence of the grand jury and suppressing their ability to – whether or not to indict or whether or not to investigate further. And I suggest you can't reach that without looking at all of the instructions given to the grand jury. And if you look at all of the instructions, you see that Judge Burns covered all of the independence. You're not an arm of the government. You're not an arm of the FBI. You have a duty to independently investigate. You are standing between the government and the accused. So you have to look at the broad spectrum of all of the instructions to determine whether or not there was that effect on their decision-making process. And I don't think you can draw that conclusion. There is no case reported that I found where an improper instruction in front of the grand jury resulted in the dismissal of the indictment. The Vasquez case is the only one cited by counsel that supports their position, and I submit that that is very different. Racial discrimination in the composition of the grand jury is different. And in the same year that that came out, which I think was 1986, the Mechanic case came out in the Supreme Court. Grand jury case, yeah. And it specifically relegated Vasquez v. Hillary to its own set of facts, that they were trying to get at that pernicious problem of racial discrimination. And the whole idea of harmless error should apply in the grand jury context. Okay. So if we apply harmless error, though, I think what Judge Reinhart said is true. It did tend to merge into, well, he was convicted, so it must have been harmless error. You know, whatever charge they came up with, he was convicted of it. So it had to be harmless. Unless you were to impose a standard that said, well, if the government had in its possession exculpatory evidence and this instruction were given and that evidence was not presented, then the error wouldn't be harmless. Well, my response is that in Mechanic, the Supreme Court specifically said that the And they specifically said, and a jury finding of guilt thereafter renders it harmless. Yes, but maybe he never would have been indicted had whatever exculpatory evidence available to the government was actually given to him. Correct. And Mechanic recognizes that possibility, that if this is brought to the attention of the district court, early perhaps the district court could make some decision about that, but after their, before trial, before trial. But if, in fact, there has been a finding of beyond a reasonable doubt of guilt. But motions to dismiss the indictment happened before trial, right? So it's not true that it's always, you could impose a harmless error standard that said, well, there's this exculpatory evidence and it should have been given.  well, there's this exculpatory evidence and it should have been given by the prosecutor given Judge Byrne's instruction. Well. And then the indictment would be dismissed, I suppose. Well, I. We wouldn't even get to this stage. I understand that. But we are at this stage and there was a finding of guilt by beyond a reasonable And it pretty much took care of these kinds of errors with the grand jury. They say, so what? He was guilty, which is hardly the way to approach the process. And that's why I don't want to rest on it entirely, Your Honor. And that's why I think the focus should be on whether or not all of these instructions taken as a whole, including this misstatement by Judge Byrne's, really subverted the decision-making process of this grand jury so that the constitutional rights of this defendant were denied. And I don't think that case can be made on this record. Unless there are further questions, I'll be happy to answer any questions on some of the other issues. Thank you very much. Thank you. Turning to Judge Reinhart's comment about, well, he was convicted, so what I think That's not mine. That's the Supreme Court. I wasn't meaning to infer that it was yours, Your Honor. But, you know, the Supreme Court also in Vasquez approached that same exact issue and they said, well, we can't know what They were saying there was no real grand jury. It was. And, you know, even the Supreme Court has a different attitude about racial discrimination with a jury than they do about just regular, what they consider run-of-the-mill errors. Well, I wouldn't call this a run-of-the-mill error. I mean, I think we can be Well, it's just normal due process errors. That's all. But I think a due process error would be if Mr. Ochoa Ramirez was deprived of a traditional function of grand jury. Well, what about, you know, address directly the argument that counsel says, if you look at the instructions as a whole, this is nothing more than a burp at an otherwise elegant dinner. This is nothing more than the gate crashers at the Indian prime minister's reception. No big deal. I would disagree with that. And the reason I disagree with that is because But he's right about all the rest of the stuff that they were told about, isn't he? Well, he  They were told that, too. They were told that, Your Honor. But, you know, there's a There's like a general instruction, which are these instructions that you're independent. You're not an arm of the government. You have the right and ability and duty to exercise your own discretion. But then there's also these specific instructions, which say Are you saying the general instructions are less important than the specific instructions? No. What I'm saying is that where a general instruction conflicts with a specific instruction, we can't presume that the error That the jury couldn't I'm sorry. That the jury followed the correct instruction. And I think we can't presume that, well, if we look at everything, the error really is harmless or not. Well, the error doesn't I mean, the error that you're talking about didn't say you're not independent or anything like that. It didn't say It didn't say you don't stand as a bulwark. You have the power. It didn't say any of that. But it didn't say that explicitly. But what it Again, what it does is, I think, implicitly and it creates an inference that there's no need to investigate because the U.S. attorney would have done so already and they would have presented exculpatory evidence to me if it existed. And since they didn't present any, I can presume that none exists. Unless there's any further questions. Thank you very much. Thank you, counsel. Thank you both. The case will be submitted. Court will stand in recess for the day. All rise for standing recess.
judges: Reinhardt, Trott, Wardlaw